IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| SUSAN M. LAMONTAGNE, | : | No. 3:14cv916 |
| Plaintiff | : | (Judge Munley) |
|  | : |  |
| v. | : |  |
|  | : |  |
| CAROLYN W. COLVIN,<br>Acting Commissioner<br>of Social Security Administration,<br>Defendant | :<br>:<br>:<br>: |  |

## **MEMORANDUM**

Before the court for disposition is Plaintiff Susan M. LaMontagne's (hereinafter "plaintiff") appeal of the Defendant Commissioner of Social Security Administration's (hereinafter "defendant") denial of her application for Social Security Disability Insurance Benefits (hereinafter "DIB"). The matter has been fully briefed and is ripe for disposition.

**Background**

Plaintiff filed for DIB on April 8, 2011, claiming disability due to cervical spine degenerative disc disease, tenosynovitis of the left foot and ankle, obesity, depression, and anxiety. (Doc. 9, Administrative Record (hereinafter "R.") at 14, 131). The Social Security Administration initially denied plaintiff's claim on July 28, 2011. (R. at 12). In response, plaintiff requested a hearing by an Administrative Law Judge (hereinafter "ALJ"). (Id.)

ALJ Michele Stolls convened a hearing on July 17, 2012, at which plaintiff appeared and testified.  (Id.)  Plaintiff testified that she worked as a deli clerk and meat cutter, a hairstylist, and, most recently, a laborer.  (R. at 156).  She has not worked since December 31, 2004, allegedly due to her disability.  (R. at 131).  Plaintiff further stated that she suffered injuries in a car accident in the fall of 2003, necessitating surgery.  (R. at 151).  At the conclusion of the hearing, the ALJ kept the record open for fourteen days, during which time the plaintiff submitted additional evidence.  In a decision issued September 17, 2012, the ALJ denied plaintiff's claim, finding that plaintiff was not "disabled" and thus not entitled to DIB.  (R. at 12-26).

Plaintiff requested the Appeals Council review the ALJ's decision.  (R. at 7).  The Appeals Council denied plaintiff's request on March 12, 2014. (R. at 1-6).  The instant appeal followed.  (Doc. 1).

**Jurisdiction**

The court has federal question jurisdiction over the Social Security Administration appeal.  See 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."); see also 42 U.S.C. § 405(g) ("Any individual, after any final

decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.  Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has her principal place of business . . . .").

**Standard of Review**

In reviewing a social security appeal, the court must determine whether "substantial evidence" supports the ALJ's decision.  See 42 U.S.C. § 405(g); Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).  The United States Supreme Court defines "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966).  The Third Circuit Court of Appeals explains that "substantial evidence has been defined as 'more than a mere scintilla;' it means 'such relevant evidence as a reasonable mind might accept as adequate.'"  Hagans, 694 F.3d at 292 (quoting Plummer, 186 F.3d at 427).

The court should not reverse the Commissioner's findings merely because evidence may exist to support the opposite conclusion.  See 42

3

U.S.C. § 405(g); Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005) (stating that courts may not weigh the evidence or substitute its own conclusion for those of the fact-finder); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001) (indicating that when an ALJ's findings of fact are supported by substantial evidence, courts are bound by those findings, even if they would have decided the factual inquiry differently).  In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo, 383 U.S. at 620.

Substantial evidence exists only "in relationship to all the other evidence in the record," Cotter v. Harris, 642 F.2d 700, 706 (3d Cir. 1981) and "must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1971).  "When a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" Plummer, 186 F.3d at 429 (quoting Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 1993)).  The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 204 (3d Cir. 2008).  Therefore, a court

reviewing the decision of the Commissioner must scrutinize the record as a whole.  Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).

Another critical requirement is that the Commissioner adequately develop the record.  Poulous v. Comm'r of Soc. Sec., 474 F.3d 88, 95 (3d Cir. 2007) (reminding ALJs of their duty to develop the record); Ventura v. Shalala, 55 F.3d 900, 902 (3d Cir. 1995) (stating that ALJs have an affirmative duty to develop a full and fair record in social security cases).  If the record is not adequately developed, remand for further proceedings is appropriate.  Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 505 (3d Cir. 2009).

**Sequential Evaluation Process**

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any **substantial gainful activity** by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A) (emphasis added).  An individual is incapable of engaging in "substantial gainful activity" when "her physical or mental impairment or impairments are of such severity that she is not only unable to do her previous work but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C.

5

§ 423(d)(2)(A).

The Commissioner utilizes a five-step sequential analysis to evaluate a claim for disability insurance benefits. 20 C.F.R. § 404.1520(a)(4). This analysis requires the Commissioner to consider, in sequence, whether a claimant (1) is engaging in substantial gainful activity;[1] (2) has an impairment, or combination of impairments, that is severe;[2] (3) has an impairment or

---

[1] "Substantial gainful activity" is work that "involves doing significant and productive physical or mental duties" and "is done (or intended) for pay or profit." 20 C.F.R. § 404.1510. If the claimant is engaging in "substantial gainful activity," the claimant is not disabled and the sequential evaluation proceeds no further.

[2] A "severe impairment" significantly limits a claimant's physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c). Basic physical work activities include the ability to walk, stand, sit, lift, carry, push, pull, reach, climb, crawl and handle. 20 C.F.R. § 404.1545(b). An individual's basic mental or non-exertional abilities include the ability to understand, carry out and remember simple instructions, and respond appropriately to supervision, coworkers and work pressures. 20 C.F.R. § 1545(c).

The determination of whether a claimant has any severe impairment that has lasted or is expected to last for a continuous period of at least twelve (12) months, at step two of the sequential evaluation process, is a threshold test. 20 C.F.R. §§ 404.1509 and 404.1520(c). If a claimant does not have any severe impairment or combination of impairments which significantly limits her physical or mental abilities to perform basic work activities that has lasted or is expected to last for a continuous period of at least twelve (12) months, the claimant is "not disabled" and the evaluation process ends at step two. Id.

If a claimant has any severe impairments, the evaluation process continues. 20 C.F.R. § 404.1520(d)-(g). Furthermore, all medically determinable impairments, severe and non-severe, are considered in the subsequent steps of the sequential evaluation process. 20 C.F.R. § 404.1523 and 404.1545(a)(2).

combination of impairments that meets or equals the requirements of a "listed impairment;" (4) has the "residual functional capacity" to return to his or her past work; and (5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. § 404.1520(a)(4)(i)-(v).  Prior to addressing step four, the ALJ must determine the claimant's residual functional capacity.[3]  20 C.F.R. § 404.1520(a)(4)(iv).

Residual functional capacity is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.  See SSR 96-8p, 1996 WL 374184.[4]  A regular and continuing basis contemplates full-time employment and is defined as eight hours a day, five days per week or other similar schedule.  Id.  The residual functional capacity assessment must include a discussion of the individual's abilities.  Id.; 20 C.F.R.§ 404.1545; Fargnoli, 247 F.3d at 40 (defining residual functional capacity as that which an individual is still able to do despite the

---

[3]  If the claimant has the residual functional capacity to do his or her past relevant work, the claimant is not disabled.

[4]  Social Security Rulings (hereinafter "SSR") constitute the Social Security Administration's interpretations of the statute it administers and of its own regulations.  Molina v. Astrue, 674 F.3d 1104, 1113 n.5 (9th Cir. 2012); Lauer v. Apfel, 169 F.3d 489, 492 (7th Cir. 1999).  SSRs do not have the force of law, id.; nevertheless, once published, they are binding on all components of the Social Security Administration.  Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984); Boone v. Barnhart, 353 F.3d 203, 210 n.16 (3d Cir. 2003); 20 C.F.R. § 402.35(b)(1).

limitations caused by his or her impairment(s)).

**Discussion**

In applying the five-step sequential analysis in the instant case, the ALJ found the following: Step 1- the plaintiff had not engaged in substantial gainful activity since December 31, 2004 (R. at 14); Step 2- the plaintiff does have the following severe impairments: obesity, tenosynovitis of the left foot and ankle, degenerative disk disease of the cervical spine, circadian rhythm sleep disorder/delayed sleep phase, history of urticaria, depressive disorder, and anxiety state (Id.); and Step 3- the plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments (R. at 15).

The ALJ next determined plaintiff has the residual functional capacity (hereinafter "RFC") to:

> perform sedentary work . . . except she is limited to occupations that require no more than occasional postural maneuvers, such as balancing, kneeling, crouching, and climbing on ramps and stairs, and she must avoid . . . climbing on ladders, ropes and scaffolds and crawling . . . [and] pushing and pulling with the lower left extremity to include the operation of pedals; must avoid concentrated prolonged exposure to fumes, odors, dusts, gases, chemical irritants, environments with poor ventilation, temperature extremes, and extreme dampness and humidity; and must avoid exposure to hazards, such as dangerous machinery and unprotected heights.  The claimant is limited to occupations requiring no more than simple, routine tasks, not performed in a

> fast-paced production environment, involving only simple, work-related decisions, and in general, relatively few workplace changes.

(R. at 18). Then the ALJ proceeded to Step 4 of the sequential evaluation and concluded that plaintiff is unable to perform any past relevant work. (R. at 23).

The ALJ next addressed Step 5, whether plaintiff can perform work in the national economy. Nadine Henzes, an impartial vocational expert, testified at the hearing regarding jobs that someone with plaintiff's limitations, as defined by the ALJ, could perform. Based upon the vocational expert's testimony, the ALJ concluded that, considering the plaintiff's age, education, work experience and residual functional capacity, jobs exist in significant numbers in the national economy that she can perform.[5] Such jobs include order clerk, document preparer, and video monitor. (R. at 20). Thus, the ALJ found that the plaintiff is not disabled from employment, but rather, "was capable of making a successful adjustment to other work that existed in significant numbers in the national economy." (R. at 24).

Plaintiff's appeal alleges that the ALJ's decision was not based upon substantial evidence, for the following two reasons: 1) the ALJ erroneously rejected the opinion of plaintiff's treating physician and had no medical basis

---

[5] Plaintiff was forty-seven years of age at the time of the hearing. (R. at 23).

9

for her finding of plaintiff's residual functional capacity; and 2) the ALJ rejected plaintiff's testimony as not credible in violation of Social Security regulations.  After careful review, the court will remand this matter for reassessment because, in both of these instances, the ALJ relied on certain dubious evidence and analysis, which undermines her conclusions and requires that we remand this case for reassessment.

**A. Plaintiff's treating physician**

Plaintiff first argues that the ALJ improperly rejected evidence from her treating physician.  Plaintiff asserts the ALJ's assessment of her RFC was, therefore, not based upon any medical evidence, because no evidence in the record conflicted with that of her treating physician.  Instead, plaintiff argues, the ALJ substituted her own lay opinion for that of plaintiff's doctor.

The Third Circuit Court of Appeals recognizes that the "opinions of a claimant's treating physician are entitled to substantial and at times even controlling weight."  Fargnoli v. Halter, 247 F.3d 34, 43 (3d Cir. 2001) (citing 20 C.F.R. § 404.1527(c)(2)).  A treating physician's report should be accorded great weight "when the opinion reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." Pododworny v. Harris, 745 F.2d 210, 217 (3d Cir. 1984); 20 C.F.R. § 404.1527(c)(2)(I).

The treating source's opinion is entitled to controlling weight, however, "only when it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record. . . .'" Johnson v. Comm'r of Soc. Sec., 529 F.3d at 202 (quoting 20 C.F.R. § 404.1527(c)(2)). When the treating physician's opinion conflicts with a non-treating, non-examining physician's opinion, the ALJ may choose whom to credit in his or her analysis, but "cannot reject evidence for no reason or for the wrong reason." Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000).

In the instant matter, Dr. Michael Kovalick was the plaintiff's primary care physician, and he offered several opinions in this case. (R. at 22). Ultimately, the ALJ gave little weight to Dr. Kovalick's opinions, noting that his records and findings were conclusory and without objective clinical findings. (Id.) The ALJ stated that Dr. Kovalick's finding that the plaintiff cannot work full time "is not supported by the record or his own treatment notes." (Id.)

The ALJ does, at times, cite to instances in Dr. Kovalick's notes where his assessments undermine or contradict his ultimate opinion that the plaintiff cannot work full time. (R. at 18-22). To the extent that the ALJ gave diminished importance to the treating physician's opinion based on conflict with or lack of objective clinical findings in his own notes and reports, the

11

ALJ's decision may have been based upon substantial evidence. But the ALJ did not clearly state, with citations to the record, what evidence conflicted with or undermined Dr. Kovalick's opinion, and so we cannot fully assess the basis for her conclusions.

Additionally, the ALJ relied generally on unspecified evidence in "the record" in weighing Dr. Kovalick's opinions. Likewise, the ALJ relied on unspecified "record evidence" in developing plaintiff's RFC, leading to the conclusion that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment."

In addition to her reliance on unspecified evidence, the ALJ relied on two specific pieces of evidence that present problems. First, and most troubling, the ALJ performed her own examination of plaintiff's foot during the formal hearing. Second, the ALJ misinterpreted plaintiff's self-assessment and testimony. The court will address these in turn.

**1. ALJ's foot examination**

The ALJ states in her opinion, "An examination of [plaintiff's] left foot at the hearing showed no significant swelling." (R. at 19). That examination consisted of the ALJ herself examining plaintiff's feet and determining, on her

own and without the aid of medical training or expertise, that plaintiff's foot was not significantly swollen. (R. at 45-49). The ALJ asked the plaintiff whether there was any swelling in her foot or ankle that "if I were to look at it, I could see?" (R. at 45). Plaintiff described scars and the fact that her left foot seems bigger than her right. (Id.) The ALJ then asked whether the plaintiff or her counsel had any objection to her examining plaintiff's feet and ankles. (R. at 46). When they replied that they had none, the ALJ asked the plaintiff to remove her shoes and socks. (Id.)

Plaintiff's counsel directed the ALJ to look at swelling on the top of plaintiff's foot, which plaintiff explained was the area from where pieces of bone were removed during surgery. (R. at 47-48). The ALJ described scarring, which she did not mention in her opinion. (R. at 47). The ALJ stated, "I mean, I don't see any, like, major swelling there." (Id.) Plaintiff's counsel pointed out that he could see that one foot had a higher level of swelling than the other, and that "neither of us are doctors." (Id.) The ALJ agreed that she is not a doctor, but expressed her opinion that what she observed was not an obvious amount of swelling that she had expected. (Id.) She continued the "examination," looking at plaintiff's right foot for comparison, asking questions about how plaintiff leans and places her weight, and concluding that she saw "a little more pad from what I can tell on the left."

13

(R. at 49).

The ALJ's examination of the plaintiff's feet and ankles was improper. Notwithstanding plaintiff's failure to object, the ALJ is not a doctor and must not substitute her own judgment as to medical issues for actual medical evidence. An ALJ may not reject a written medical opinion of a treating physician based on his or her own credibility judgments, speculation or lay opinion. Morales, 225 F.3d at 317; see also Frankenfield v. Bowen, 861 F.2d 405, 408 (3d Cir. 1988) (finding that an ALJ may not reject medical determinations by substituting his or her own medical judgments). Dr. Kovalick reported swelling in the foot (R. at 353-355), which the ALJ mentions before granting Dr. Kovalick's opinion "only partial weight" (R. at 22). In choosing to reject the evaluation of a treating physician, an ALJ may not make speculative inferences from medical reports and may reject treating physician's opinions outright only on the basis of contradictory medical evidence. Morales, 225 F.3d at 317.

Here, the ALJ took upon herself a medical role and conducted a physical exam of the plaintiff. This improperly skewed her assessment of the record evidence and served, in part, as the basis for her rejection of the treating physician's evidence and her RFC assessment. Therefore, we find that the ALJ's conclusions in these respects were not based upon substantial

evidence, and must be revisited on remand.

## 2. Plaintiff's self-assessment report

The ALJ further erred in her use of the plaintiff's self-assessment report and testimony.  The ALJ found the plaintiff to have no restrictions in daily living, and that she can "perform personal care activities, drive, clean, do laundry, do dishes, vacuum, walk the dog, cook simple meals, pay bills, count change, handle a savings account, and use a checkbook/money order." (R. at 17).  The ALJ further found that plaintiff had no difficulties in social functioning, "attends church for major holidays, shops in stores for food, walks her dog, went fishing in 2011, and uses the computer for Facebook and games." (Id.)

The record evidence, however, contradicts these findings.  Plaintiff testified that her husband helps her with household chores, and that three days per week she cannot do any household chores at all due to "extreme pain." (R. at 59, 62).  When she can do chores like laundry, it takes a long time and she needs to take breaks. (R. at 62-63).  On days when she cannot take her dog out for a walk, she lets him out in the backyard on his own and puts him on a treadmill for exercise. (R. at 60).  Regarding social functioning, plaintiff reported that she does not spend time with others, needs to be reminded to go places, only goes to places like the grocery store and doctor

when she has to, and engages in no social activities because "pain keeps me from being social." (R. at 147-48). Plaintiff attends church on Christmas and Easter, two days per year. (R. at 38).

The ALJ does not explain why she rejected evidence in the record that contradicts her assessment of plaintiff's abilities and activities, which led to the ultimate RFC assessment. We require from an ALJ "not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected. In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981). On remand, the ALJ must explain and support her decisions to reject record evidence.

## B. ALJ rejected plaintiff's testimony

Having determined remand is appropriate for the reasons above, the court need not address plaintiff's second argument, that the ALJ improperly rejected plaintiff's own evidence as not credible. To the extent that this determination was influenced by the same improper evidence discussed above, the ALJ must revisit the issue of plaintiff's credibility on remand.

## Conclusion

For the above-stated reasons, the court finds that the ALJ's

determination is not supported by substantial evidence.  We will remand this action to the ALJ for further consideration consistent with this memorandum.  An appropriate order follows.


**Date:4/21/15**              **s/ James M. Munley**
                              **JUDGE JAMES M. MUNLEY**
                              **UNITED STATES DISTRICT COURT**